**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-25960-KMM

JOSE MIGUEL ESTUPINAN OLIVEROS,

Petitioner,

v.

MIAMI ICE FIELD OFFICE DIRECTOR,

Respondent.
_________________________________________/

**ORDER**

THIS CAUSE came before the Court upon Petitioner Jose Miguel Estupinan Oliveros's Verified Petition for Writ of Habeas Corpus (the "Petition" or "Pet."). (ECF No. 1). The Court issued an Order to Show Cause (the "OTSC") requiring Respondent to file one consolidated memorandum of fact and law to show why the Petition should not be granted. *See generally* (ECF No. 3). Respondent thereafter filed a Response to the Petition (the "Response" or "Resp."). (ECF No. 4). Petitioner did not file a reply, and the time to do so has passed. The Petition is now ripe for review. As set forth below, the Petition is GRANTED IN PART as to Petitioner's entitlement to a bond hearing. The Court makes no determination as to whether Petitioner is in fact entitled to be released following such a hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a Colombian citizen who applied for admission into the United States on October 6, 2024, at the Camino Real International Bridge 2 Port of Entry in Eagle Pass, Texas. *See* Resp. at 2; (ECF No. 4-1) at 1–2. After determining that Petitioner did not possess proper documentation, U.S. Customs and Border Protection issued Petitioner a Notice to Appear, charging him with inadmissibility in violation of Immigration and Nationality Act ("INA") §

212(a)(7)(A)(i)(I). *See* Resp. at 2; (ECF No. 4-1) at 2; (ECF No. 4-2). Petitioner was thereafter paroled into the United States with authorization to remain until April 24, 2026. *See* (ECF No. 4-3) at 1. On August 26, 2026, U.S. Immigration and Customs Enforcement ("ICE") encountered Petitioner following a traffic stop and took him into custody. *See* Resp. at 2–3; (ECF No. 4-4) at 2.

Petitioner alleges that, because he was not seeking admission when detained, he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) but is instead subject to 8 U.S.C. § 1226 and entitled to a bond hearing. *See* Pet. ¶¶ 5, 65–67. On this basis, Petitioner brings: Count I for violation of the INA; Count II for violation of due process; Count III for unlawful use of civil immigration detention for punitive purposes; Count IV for denial of the regulatory right to custody redetermination and violation of the restored twelve-hour limit on hold-room detention; and Count V for violation of the Fourth Amendment. *See id.* ¶¶ 112–45.

In the OTSC, the Court assumed jurisdiction over the Petition and ordered Respondent to file one consolidated memorandum of law and fact to show why the Petition should not be granted. *See* (ECF No. 3) at 2–3. The Response has since been filed. *See generally* Resp. Therein, Respondent argues that: (1) *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, 175 F.4th 1258 (11th Cir. 2026) is factually and legally distinguishable from the instant Petition; (2) Petitioner is an arriving alien under 8 U.S.C. § 1225(b)(2); (3) applicants for admission may only be released on parole pursuant to 8 U.S.C. § 1182(d)(5); (4) Petitioner's detention does not violate due process; and (5) a challenge to the lawfulness of an arrest is not proper in a habeas proceeding. *See* Resp. at 3–8. Petitioner has not filed a reply, and the time to do so has passed.

## II. LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a

petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted). The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Further, for "'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The Court's habeas jurisdiction extends to challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. DISCUSSION

### a. The Policy

The policy underlying this action, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by the Department of Homeland Security ("DHS") in coordination with the Department of Justice ("DOJ") and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1)." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo"). The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* Contrary to previous practice, the Policy imposes mandatory detention

regardless of the circumstances of an alien's entry without inspection or admission. *See generally* ICE Memo.

The Board of Immigration Appeals ("BIA") adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)." 29 I. & N. Dec. 216, 229 (BIA 2025). On February 18, 2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the Administrative Procedure Act. *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026). However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*. *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026). Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute and, as discussed below, the Policy has been heavily litigated across the country. The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S.

ports of entry. *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Mia. Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order at 6–11, *Cerro Perez v. Parra*, No. 25-cv-24820 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases).

The Eleventh Circuit has now found that 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *See Hernandez Alvarez*, 175 F.4th at 1262, 1285.

**b. Statutory Framework**

Turning to the Petition, Respondent argues that Petitioner is an arriving alien and is therefore subject to mandatory detention under § 1225(b)(2). *See* Resp. at 4–5. As an initial matter, "[t]he question of whether [§] 1225(b)(2) or [§] 1226(a) governs [a p]etitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3. The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 175 F.4th at 1261. In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not. *See id.* at 1265–84. As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." *Id.* § 1225(a)(1). Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim. *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§] 1229a of this title," which governs removal. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined. *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A). Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending

the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General: (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization. *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework." *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269. The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[1]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Such a finding would require a reading that all "applicants for admission," which is any alien present

[1] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA. The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

without admission or arriving, are also "seeking admission." *Id.* As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop. *Hernandez Alvarez*, 175 F.4th at 1269 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.
>
> We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 175 F.4th at 1285.

**c. Petitioner's Detention**

Here, Petitioner's parole terminated upon its expiration on April 24, 2026. *See* Resp. at 2, 4; (ECF No. 4-3) at 1; *see also* 8 C.F.R. § 212.5(e)(1)(ii) (providing that parole automatically

terminates upon expiration). Pursuant to 8 U.S.C. § 1182(d)(5)(A), when an alien's parole is terminated, the alien "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *See id.*; *see also* 8 C.F.R. § 212.5(e)(2)(i) (explaining that termination of parole restores an alien "to the status that he or she had at the time of parole"). Relying on that provision, Respondent contends that Petitioner maintained his status as an "arriving alien" even though he was paroled into the country. *See* Resp. at 5.

The INA does not define the phrase "arriving in the United States," and the Court therefore turns to the phrase's ordinary meaning. *See Bondi v. VanDerStok*, 604 U.S. 458, 477 n.4 (2025) (explaining that statutory interpretation requires courts to "interpret the words Congress enacted 'consistent with their ordinary meaning'" (citation omitted)). Merriam-Webster defines "arrive" or "arriving" as "to reach a destination" or "to make an appearance[,] to come upon the scene." *Arrive*, Merriam-Webster's Online Dictionary (last updated Sep. 22, 2026), https://www.merriam-webster.com/dictionary/arrive. Read pursuant to its ordinary meaning, an alien "arriving in the United States" thus refers to an alien "who has reached the border or a port of entry," and "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States." *See Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 90–91 (D.D.C. 2025) ("Read according to its plain meaning, a noncitizen 'arriving' in the United States would be one who is in the process of reaching his or her destination (the United States) and making an appearance here.").

The ordinary meaning of the phrase is supported by the statutory context. For example, nothing in § 1225 suggests that "arriving in the United States" is an "interminable . . . status that

attaches to a noncitizen upon arrival." *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 306 (E.D.N.Y. 2025) (cleaned up and citation omitted), *appeal dismissed*, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). Rather, § 1225's use of "arrive," "arrival," and "arriving" appears "to refer to a process that occurs upon physical entry into the" country. *See Qasemi*, 2025 WL 3654098, at *6 (citation omitted); *see also, e.g.*, 8 U.S.C. § 1225(b)(1)(F) ("[A]n alien . . . who arrives by aircraft at a port of entry."); *id.* § 1225(b)(2)(C) ("[A]n alien . . . who is arriving on land (whether or not at a designated port of arrival)[.]"); *id.* § 1225(d)(2) (authorizing the detention of "arriving aliens" on "the vessel or at the airport of arrival"). In contrast, an "applicant for admission" under § 1225(a)(1) describes "a status that does not conclude until the non-citizen is formally *admitted*," rather than upon arrival. *See Qasemi*, 2025 WL 3654098, at *6 (emphasis added).

Moreover, § 1225(b)(1), entitled "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled," contemplates the inspection and screening of arriving aliens. This requirement is not reimposed on aliens like Petitioner who are already present in the interior after having been paroled into the United States. Indeed, nothing in the statute requires an alien whose parole has terminated to return to a port of entry for renewed inspection or screening. *See Linarez v. Stamper*, No. 1:26-CV-00101-JAW, 2026 WL 592294, at *6 (D. Me. Mar. 3, 2026) ("The expiration of [petitioner's] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening." (citations omitted)); *Walizada v. Trump*, No. 2:25-CV-00768, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025) ("No inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired."). It follows then that "[t]he provisions applying to 'arriving aliens' thus logically apply just to those noncitizens upon their presentation at the border of the United States." *Qasemi*, 2025 WL 3654098, at *6.

For the foregoing reasons, the Court finds that Petitioner finished "arriving in the United States" upon his parole into the United States. *See, e.g.*, *Alfonso v. Current Warden, Miramar ICE Field Off.*, No. 26-60257-CIV, 2026 WL 1083330, at *5 (S.D. Fla. Apr. 22, 2026) (finding that because petitioner was paroled into the country and "ha[d] been present in the United States since 2022[, he was thus] not 'arriving' in any ordinary sense of the word"); *Ivonin v. Rhoney*, No. 6:25-CV-06673 EAW, 2026 WL 199283, at *4 (W.D.N.Y. Jan. 26, 2026) ("[S]uggesting that [petitioner] is still on the threshold of entry into this country, based on his re-entry into the United States through parole which expired over seven years ago, stretches the 'legal fiction' beyond reason."); *Penott Rodriguez v. Fields*, No. CV 26-117-DLB, 2026 WL 1078101, at *3 (E.D. Ky. Apr. 21, 2026) ("It follows logically then, that once [p]etitioner's parole expired, yet he remained in the country, he would have similar status to any other undocumented immigrant who entered the United States without inspection."). Accordingly, as parole does not constitute "an admission of [an] alien," Petitioner is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1). *See* 8 U.S.C. § 1182(d)(5)(A).

However, while Petitioner may properly be considered an applicant for admission under this definition, the Court also finds that Petitioner is not "seeking admission" within the meaning of § 1225(b)(2)(A). For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioner was somehow attempting to secure admission into the country when detained following a traffic stop. *See Hernandez Alvarez*, 175 F.4th at 1285 (recognizing "the longstanding border-interior distinction for purposes of detention" in the INA). The Court thus finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and therefore that Petitioner is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. *See Sylvaince*

*v. Warden, Mia. Fed. Det. Ctr.*, No. 26-CV-23991-RAR, 2026 WL 2568522, at *3 (S.D. Fla. Aug. 31, 2026) (finding that applying § 1226(a) to an alien detained in the interior following the expiration of parole "is consistent with the *ratio decidendi* of *Hernandez Alvarez*"); *DUNIESKY MARTINEZ-GIL, Petitioner, v. WARDEN, N. FLA. DET. FAC., Respondents.*, No. 3:26-CV-1642-JEP-SJH, 2026 WL 2130714, at *1 (M.D. Fla. July 24, 2026) (same); *Ivonin*, 2026 WL 199283, at *4 ("[W]here a petitioner's re-arrest was *not* a continuation of the initial border encounter, but an independent decision to detain the individual after the expiration of his parole, the detention pursuant to that re-arrest arises under § 1226." (emphasis in original)); *Francois v. Noem*, No. CV 25-7334, 2026 WL 27565, at *3 (E.D. Pa. Jan. 5, 2026) ("Courts around the country have also found noncitizens who were paroled under § 1182(d)(5) are not subject to mandatory detention if they have been residing within the country for years." (citation omitted)).

Accordingly, Petitioner is entitled to an individualized bond hearing as a detainee under § 1226(a). The Court will not reach the merits of Petitioner's remaining claims because the relief requested as to a bond hearing in Count I is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondent fail to provide Petitioner with a bond hearing as ordered herein, he may renew his other claims.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is GRANTED IN PART as to Petitioner's entitlement to a bond hearing. The Court will not award Petitioner fees and costs under the Equal Access to Justice Act at this time upon a finding that Respondent's asserted position was substantially justified under the circumstances. *See* 28 U.S.C. § 2412(d)(1)(A). Within seven (7) days of this

Order, Respondent shall provide Petitioner with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner. Such bond may not be denied on the basis that Petitioner is detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of September, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record